IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

NEVILLE CHEMICAL COMPANY,

    Plaintiff,

    v.

TIG INSURANCE COMPANY, successor in interest to TRANSAMERICA INSURANCE COMPANY,

    Defendants.

Civil Action No.

Declaratory Judgment

## COMPLAINT FOR DECLARATORY JUDGMENT

AND NOW, comes the Plaintiff, Neville Chemical Company (hereinafter "Neville Chemical"), by and through its attorneys, Dickie, McCamey & Chilcote, P.C., and J. David Ziegler, Esquire, and files the following in support of its Complaint in Civil Action for Declaratory Judgment:

## STATEMENT OF JURISDICTION

1. Plaintiff, Neville Chemical, is a Pennsylvania corporation with its principal place of business at 2800 Neville Road, Pittsburgh PA 15225.

2. Defendant, TIG Insurance Company, successor in interest to Transamerica Insurance Company, is a New Hampshire corporation with its principal place of business at 250 Commercial Street, Suite 2009A, Manchester, New Hampshire, 03101.

3. The amount in controversy, exclusive of interest and costs, exceeds $75,000.

4. Subject matter jurisdiction exists in this Court pursuant to 28 U.S.C. § 1332.

5.      This is a Complaint for Declaratory Judgment brought pursuant to 28 U.S.C. §2201, said declaratory judgment being sought for the purpose of determining a question in actual controversy between the parties, as hereinafter more fully stated.

## HISTORY OF CONTROVERSY

### Insurance Policy

6.      At all relevant times, Neville Chemical was a named insured under a Specific Excess Workers Compensation Policy issued by Transamerica Insurance Company at Policy No. W - 141610 (hereinafter "TIG Policy").  A true and correct copy of Policy No. W - 141610 is attached hereto and marked as **Exhibit A**.

7.      By a Renewal Endorsement effective January 1, 1993, the TIG Policy was renewed for the period from January 1, 1993 to January 1, 1994.  *See* Endorsement No. 9 included with Exhibit A.

8.      The TIG Policy Premium for the above-stated Policy Period was $101,000.00, which was paid by Neville Chemical.  *Id.*

9.      Pursuant to the TIG Policy, Neville Chemical had an Insured Retention of $500,000 for each Occurrence as defined under the Policy ("hereinafter referred as "SIR" or "Retention").  *Id.*

10.     TIG Insurance Company had a limit of Indemnity for Each Occurrence for Workers Compensation of $6,000,000 with an aggregate Workers Compensation & Employers Liability limit of $6,000,000.  *Id.*

11.     The TIG Policy stated the following with regard to how the insurance applied:

> This insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes resulting death.

    1.    The bodily injury must be sustained by an employee included in the group of employees described in the Schedule.

    2.    The bodily injury must occur in the course of employment necessary or incidental to work in a state listed in the Schedule.

    3.    The bodily injury must occur in the United States of America, its' territories or possession, or Canada, and may occur elsewhere if the employee is a United States or Canadian citizen temporarily away from those places.

    4.    Bodily injury by accident must occur during the policy period.

    5.    Bodily injury by disease must be caused or aggravated by the conditions of employment. The employee's last day of last exposure to the conditions causing or aggravating such bodily injury by disease must occur during the policy period.

*See* a copy of the TIG Policy attached hereto as "**Exhibit A.**"

12.    The TIG Policy further stated:

"The Company will indemnify the Insured for an amount equal to the benefits in excess of the Retention that would be required if the Insured and the Insured's employees described in the Schedule were subject to the workers compensation law show in the Schedule. The Company will indemnify the Insured for those amounts paid in excess of the Retention to the claimants who would be entitled to them under the law.

13.    The TIG Policy further stated:

Part 1. COVERAGE

(1)    such loss would be covered under the Insured's qualified self-insured retention plan in those states named in Item 3 of the Declarations, or;
(2)    such loss would be compensable under the Workers Compensation Act of any state for employees injured who are normally employed in a state named in Item 3 of the Declarations and then only for that portion of loss, not exceeding the benefits in the state in which the injured employees are normally employed.

14. The TIG Policy defined "loss" to mean only such amounts as are actually paid by the Insured in payment of benefits under the applicable Workers Compensation Act, (or in settlement of its Employers Liability Insured hereunder) in settlement of claims, or in satisfaction of awards or judgements. However, the term "loss" shall not include court costs, interest upon awards or judgement, investigation, adjustment and legal expenses, salaries paid to employees of the Insured, nor fees and retainers paid to the Insured's service organization.

## Worker's Compensation Claim of Larry Kelley

15. On June 24, 1993, Larry Kelly was employed by Neville Chemical Company as a pump mechanic / millwright.

16. While in the course of performing work-related activities, Mr. Kelly installed a large hot oil pump and injured his back.

17. On February 16, 1994, Mr. Kelly received an L5 laminectomy operation along with a bilateral L5-S1 microdisectomy.

18. Over the course of time, Mr. Kelley returned to work as a millwright.

19. In 2003, Mr. Kelley again started to experience a recurrence of his previous injury including low back and lower extremity pain which eventually caused him completely unable to work.

20. Mr. Kelley has not worked since January 2005.

21. Since his initial accident on June 24, 1993, Mr. Kelley has undergone three Independent Medical Examinations.

22. As the result of the most recent IME dated November 30, 2006, Dr. Daniel A. Wecht, opined that "Mr. Kelly's current right lower extremity pain, weakness, and

numbness complaints related largely to his original work injury of June 1993." *See* IME report dated November 30, 2006 attached hereto as **Exhibit B**.

23. Further, Dr. Wecht stated that he did not have any record of any significant prior low back problems that pre-dated the work injury of June 24, 1993.

24. Dr. Wecht did opine that some of Mr. Kelley's mechanical low back pain and left lower extremity pain relate more to progressive degenerative change, but his current difficulties related to both his degenerative condition and his old work injury. *Id.*

25. Since the accident, Neville Chemical has paid $207,195.00 in medical bills for Mr. Kelley's treatment.

26. Further, Neville Chemical has paid indemnity/wage loss benefits of $340,825.00.

27. As the result of Mr. Kelley's loss, Neville Chemical has paid over $500,000, which is the self-insured retention limit stated in the TIG Policy.

28. Neville Chemical placed TIG Insurance on notice that the $500,000 SIR limit had been reached and requested coverage under the TIG Policy.

29. In response to this request, TIG Insurance, through its TPA RiverStone denied Neville Chemical's request for coverage and stated that Neville Chemical was "comingling occurrences" and, therefore, the SIR had not been reached. *See* Denial Letter date February 9, 2016 attached hereto as **Exhibit C**.

30. TIG Insurance further explained that Mr. Kelley's injury was a "cumulative injury" and, therefore, was an "occupational disease" as defined under the policy. *See* Exhibit C.

31.  TIG Insurance improperly and incorrectly focused on Dr. Wecht's opinion relating to potential degenerative conditions of Mr. Kelley's lower back and failed to recognize or acknowledge Dr. Wecht's clear and unequivocal opinion that certain of Mr. Kelley's complaints were related largely to Mr. Kelley's original work injury.

32.  After receiving the denial letter, Neville Chemical requested TIG Insurance to reconsider its position regarding coverage.

33.  This request was denied and the coverage denial was reaffirmed on September 7, 2016.  *See* Denial Letter attached hereto as **Exhibit D.**

## COUNT I – DECLARATORY JUDGMENT

34.  The averments contained in paragraphs 1 through 34 of this Complaint are incorporated herein by reference as if same were more fully set forth at length.

35.  Pursuant to the TIG Policy, "The Company will indemnify the Insured for an amount equal to the benefits in excess of the Retention that would be required if the Insured and the Insured's employees described in the Schedule were subject to the workers compensation law show in the Schedule. The Company will indemnify the Insured for those amounts paid in excess of the Retention to the claimants who would be entitled to them under the law."  TIG Policy, Exhibit A, p. 1.

36.  TIG Insurance further states that it "agrees to indemnify the Insured against loss as a result of each occurrence in excess of such Retention, subject to the Limit of Indemnity provided for in Item 4 for this types of coverage involved of the Declarations." ID. at p. 1, Part 2.

37.  An occurrence is defined "as applied to bodily injury, shall mean "accident". Occupational disease sustained by each employee shall be deemed to be a separate

6

occurrence and occurrence shall be deemed to take place on the date upon which the employee is last exposed at work to conditions allegedly causing such occupational disease." *Id.* at p. 2, Part 4.

38. The TIG Policy defines "loss" to mean "only such amounts as are actually paid by the Insured in payment of benefits under the applicable Workers Compensation Act, (or in settlement of its Employers Liability Insured hereunder) in settlement of claims, or in satisfaction of awards or judgements. However, the term "loss" shall not include court costs, interest upon awards or judgement, investigation, adjustment and legal expenses, salaries paid to employees of the Insured, nor fees and retainers paid to the Insured's service organization" *Id.*

39. Larry Kelley was entitled to receive worker's compensation benefits as the result of his June 24, 1993 work related injury that occurred as the result of an accident.

40. As the result of Larry Kelly's injury, Neville Chemical has paid worker's compensation benefits above the stated $500,000 Retention and continues to pay benefits to Mr. Kelley as the result of his June 24, 1993, work related injury.

41. Before reaching the Retention threshold under the policy, Neville Chemical placed TIG Insurance on notice of a potential claim under the TIG Policy.

42. After paying over $500,000 in worker's compensation benefits to Mr. Kelley, Neville Chemical requested TIG Insurance to pay excess worker's compensation coverage available under the TIG Policy as the result of the covered loss.

43. TIG Insurance denied this request and refused to indemnify Neville Chemical for its loss under the Policy including the worker's compensation benefits paid by Neville Chemical Company above the stated Retention amount of $500,000.

44. The amount currently owed to Neville Chemical for the payment of benefits beyond the $500,000 SIR is $48,020.00, as of March 1, 2017, and continues to increase as additional indemnity and medical payments are incurred.

45. It is Neville Chemical's position that Larry Kelly's inability to work was caused by his June 24, 1993 work related accident and those injuries caused by that accident.

46. This position is supported by the medical records as well as the independent medical examinations performed by Dr. Daniel A. Wecht.

47. Mr. Kelley's medical problems that eventually ended his career as a millwright were a recurrence of his original work related injury and, therefore, relate back to the date of his original injury, June 24, 1993.

48. Therefore, it is Neville Chemical's position that there is only one occurrence under the TIG Insurance Policy and Neville Chemical has paid over $500,000 in worker's compensation benefits to Mr. Kelley as the result of that one occurrence.

49. As such, the excess worker's compensation insurance provided by the TIG Policy applies to Mr. Kelley's claim up to the stated limits of insurance.

50. TIG Insurance is required to indemnify Neville Chemical again loss as the result of this occurrence under the Policy.

WHEREFORE, Plaintiff Neville Chemical Company respectfully requests that this Honorable Court issue an Order declaring that Neville Chemical Company does not have a continuing duty to pay for worker's compensation benefits to Larry Kelley as the result of the June 24, 1993 work related accident above the $500,000 Retention Limit contained in the TIG Policy; TIG Insurance shall pay any worker's compensation benefits owed to Larry

Kelley arising from the June 24, 1993 work related accident up to the amount of the Policy Limits stated within the TIG Policy; TIG Insurance shall reimburse Neville Chemical Company for all worker's compensation benefits paid to Larry Kelley above the $500,000 Retention stated in the TIG Policy; as well as any further relief the Court may deem proper and appropriate.

**JURY TRIAL DEMANDED.**

                                        Respectfully submitted,

                                        **DICKIE, McCAMEY & CHILCOTE, P.C.**

                                        By: s/J. David Ziegler
                                        J. David Ziegler, Esquire
                                        PA ID #92882

                                        Two PPG Place, Suite 400
                                        Pittsburgh, PA 15222
                                        412-281-7272

                                        *Attorney for Plaintiff, Neville Chemical Company*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that copies of the foregoing **COMPLAINT FOR DECLARATORY JUDGMENT** have been served on this 15th day of March, 2017, by First Class U.S. Mail to the following:

TIG Insurance Company
250 Commercial Street, Suite 2009A
Manchester, New Hampshire, 03101

DICKIE, McCAMEY & CHILCOTE, P.C.

By:   s/J. David Ziegler
        J. David Ziegler, Esquire

*Counsel for Plaintiff, Neville Chemical Company*

5468538.1