**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| NEVILLE CHEMICAL COMPANY, | ) | |
| | ) | Civil Action No. 2:17-cv-00334-CRE |
| Plaintiff, | ) | |
| vs. | ) | *Electronically filed* |
| | ) | |
| TIG INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT TIG INSURANCE COMPANY'S**
**MOTION FOR SUMMARY JUDGMENT**

AND NOW, comes Defendant, TIG Insurance Company ("Defendant" or "TIG"), by and through their undersigned counsel, and pursuant to Federal Rule of Civil Procedure 56, moves for summary judgment on Plaintiff Neville Chemical Company's ("Plaintiff" or "Neville") Complaint, and in support thereof, submits and hereby incorporates its accompanying Brief, Statement of Material Facts and Appendix of Exhibits:

1.      This action involves an insurance coverage dispute between Plaintiff Neville and its Specific Excess Worker's Compensation insurer, TIG.

2.      The applicable TIG Policy No. W-141610 ("Policy") (initially issued by predecessor to TIG, Transamerica Insurance Company), is a reimbursement policy and contains a Self-Insured Retention ("SIR") of $500,000 for each Occurrence as defined under the Policy (Appendix 1 - Complaint, ¶ 6 and 9).

3.      Plaintiff's claim against TIG revolves around its request for reimbursement of workers compensation benefits paid (and continuing to be paid) to Neville employee, Larry Kelley

(hereafter, "Kelley") (Appendix 1 - Complaint, ¶ 15 – 33).[1]  Plaintiff brought suit for declaratory judgment seeking an Order declaring that Neville no longer has a duty to pay worker's compensation benefits to claimant Larry Kelley as a result of a June 24, 1993 work related accident above the SIR limit of $500,000.00 in the policy; that TIG must reimburse Neville for any amounts paid over the $500,000.00 SIR; and that  TIG must continue to pay any further worker's compensation benefits to Larry Kelley as a result of the June 24, 1993 work related accident.

4.      The pertinent facts are undisputed. All parties agree that Kelley has a history of work related injuries with medical treatment and lost wages that are well documented (Appendix 16 - Neville 0426 and Neville 0429).

5.      Pertinent to Plaintiff's claim and the within Motion, are the contractual terms and definitions in the Policy, which are clear and unambiguous. Specifically, the crux of the case is the definition of Occurrence under the Policy.

6.      Under the clear and unambiguous policy language and definitions, Kelley sustained injuries from multiple occurrences.  However, Plaintiff presents all of Kelley's injuries solely under a 1993 occurrence in an effort to satisfy the SIR limit required for TIG's excess coverage to be triggered.

7.      TIG requests that this Court enter summary judgement in its favor with a declaration that (a) Mr. Kelley's compensable disability is the result of multiple "occurrences" as defined under the Policy, (b) Neville has not satisfied the SIR under any one occurrence that caused bodily injury during the policy period, and (c) TIG has no duty to provide Excess Workers Compensation benefits to Plaintiff to cover the Kelley Claim.

---

[1] The issues before the Court are between Plaintiff and TIG only.  Neville employee Larry Kelley is not a party to this action, and his right to employee benefits for his injuries will not be affected by the resolution of the within matter.

8.      The TIG Policy states, in pertinent part:

PART 1.  COVERAGE

Self-Insured Indemnity Coverage. The Company will indemnify the Insured for loss *resulting from an occurrence* during the contract period provided either:
> (1) such loss would be covered under the Insured's qualified self-insured retention plan in those states named in Item 3 of the Declarations, or;
> (2) such loss would be compensable under the Workers Compensation Act of any state for employees injured who are normally employed in a state named in Item 3 of the Declarations and then only for that portion of loss, not exceeding the benefits of the state in which the injured employees are normally employed.

(Appendix 1 - Complaint, ¶ 13 and Exhibit A, Part 1. Coverage.)

9.      PART 4. DEFINITIONS, Section (g) of the TIG Policy defines "**occurrence**" as applied to bodily injury, to mean "*accident*".[2]  **Occupational disease** sustained by each employee *shall be deemed to be a separate occurrence and occurrence shall be deemed to take place on the date upon which the employee is last exposed at work* to conditions allegedly causing such occupational disease.[3]

10.     On June 24, 1993, while in the course of his employment with Plaintiff as a pump mechanic/millwright, Larry Kelley injured his back while installing a hot oil pump (Appendix 1 - Complaint, ¶ 15 -16).

---

[2] The TIG Policy does not define "accident." Words of common usage in an insurance policy are construed according to their natural, plain, and ordinary sense. *Madison Construction Co. v. Harleysville Mutual Insurance Co.*, 557 Pa. 595, 735 A.2d 100, 108 (Pa. 1999).  Pennsylvania courts have consulted dictionary definitions of words to determine their ordinary usage. Id. Webster's II New College Dictionary 6 (2001) defines "accident" as "[a]n unexpected and undesirable event," or "something that occurs unexpectedly or unintentionally." *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888, 898 (Pa.2006).
[3] Occupational Disease is defined in the Policy as "cumulative injuries." (Appendix 1 - Complaint, Exhibit A, Part 4.  Definitions.)

11.     Following the June 1993 injury, Larry Kelley was diagnosed with a **L5-S1** Disc Herniation, and underwent a lumbar laminectomy at L5 and a bilateral microdiscectomy at **L5-S1** on February 16, 1995 (Appendix 1 - Complaint, ¶ 17 and Appendix 10 - Neville 0119-0120).

12.     A follow-up MRI of the lumbar spine completed on September 5, 1995, did not show evidence of spinal stenosis or herniations at any level (Appendix 6 - Neville 0021 – 0022).

13.     Mr. Kelley returned to work in 1995, and achieved full time regular duty as of January 1996 (Appendix 5, 19 and 20 - Neville 0010-0011, Neville 0440 and 0444, and Neville 0449).

14.     Following his return to full time work, Kelley maintained the same position as he had prior to the 1993 injury (Appendix 2 - L. Kelley Deposition, Page 92, Lines 3 – 14).

15.     From April of 1996 through January of 2001, no indemnity or wage loss payments were made by Plaintiff for Kelley's 1993 injury (Appendix 11 - Neville 0164, and Appendix 3 - W. Pesce Deposition, Page 70, Line 7, through Page 71, Line 4).

16.     Several years later, in early 2001, Kelley filed a separate Workers Compensation claim for a back injury he sustained on December 28, 2000.  Neville denied Kelley's claim on or about February 20, 2001 (Appendix 18 - Neville 0437). Kelley did not appeal.

17.     Kelley subsequently complained of an additional injury while installing a pump on or about July 24, 2003, ***eight years after returning to work***, and was advised by the company doctor, Jan Maratta, M.D., not to work until further notice (Appendix 24 - TIG000423.  See also, Appendix 15 - Neville 0372).

18.     Following the 2003 injury, an August 15, 2003 MRI of the lumbar spine showed **Degenerative Discs L3-L4, L4-L5** and **L5-S1**, and **L3-L4 intervertebral disc bulging** (Appendix 4 - Kelly Production, Page 49).

19.     An additional subsequent MRI of the lumbar spine on May 18, 2005 showed **degenerative changes** with annular tears at **L3-4 and L4-5**, as well as arthritis throughout and bulging at **L3-4 and L4-5** (Appendix 26 - TIG002391).

20.     Kelley did not return to work following the July 2003 incident.

21.     Plaintiff provides Kelley with workers compensation benefits solely under his 1993 claim.

22.     TIG denied Plaintiff's claim for excess workers compensation coverage because Plaintiff commingled Kelley's occurrences of injuries under the 1993 claim when in actuality, Kelley's injuries were the result of multiple occurrences.

23.     Kelley's 2003 occurrence is outside of Policy period.

24.     Further, Plaintiff's "commingling" of occurrences under the 1993 Kelley claim exaggerates the amount of SIR paid by the Plaintiff.

25.     In fact, Plaintiff has not satisfied the applicable SIR per occurrence and is not entitled to excess workers compensation coverage from TIG for the Larry Kelley claim as a matter of law.

26.     Under Pennsylvania law, the interpretation of an insurance contract is a question of law for the court. *Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 900 (3d Cir.1997). "Thus, on a summary judgment motion a court can determine, as a matter of law, whether a claim is within a policy's coverage." *Verticalnet, Inc. v. U.S. Specialty Ins. Co.*, 492 F. Supp. 2d 452, 456 (E.D. Pa. 2007) (*citing Butterfield v. Giuntoli*, 448 Pa.Super. 1, 670 A.2d 646, 651 (1995)).

27.     As noted above, the definition at-issue regarding the availability of excess workers compensation coverage is *occurrence*, meaning accident or occupational disease (as defined in the Policy).

28.     TIG provided excess coverage for Plaintiff from January 1, 1991 through January 1, 1994 (Appendix 22 - Neville 0554).

29.     The undisputed record shows that Kelley sustained multiple accidents at work with different documented injuries (Appendix 16 - Neville 0426).

30.     Specifically, Kelley sustained a L5-S1 injury in 1993.  Kelley's initial 1993 accident was a traumatic disc herniation that required surgery.  Subsequently, Kelley recovered and returned to work without restriction in January of 1996.

31.     Kelley continued to work as a pump mechanic/millwright for over eight years until he sustained another accident on or about July 24, 2003 while working on a motor (Appendix 14 and 15 - Neville 0372, Neville 0306).

32.     Following the 2003 accident however, Kelley's relevant diagnostic studies showed tears and bulging at L3-4 and L4-5 as opposed to L5-S1 (Appendix 27 - TIG002517).

33.     Such an incident and resultant injury constitutes a separate occurrence under the Policy.

34.     Further, the post July 2003 medical records noted substantial degenerative changes and arthritis, which is also indicative of occupational disease (Appendix 25 - TIG001724-001725).

35.     The occupational disease suffered by Kelley (as established by his medical records and diagnostic studies) is also a separate occurrence under the Policy, which is deemed to take place on the date that the employee, in this case Kelley, is last exposed (Appendix 1 - Complaint, Exhibit A).

36.     Kelley's last day of work was July 24, 2003, outside of the TIG Policy period (Appendix 24 - TIG 000423).

37.    Plaintiff's own Independent Medical Examinations completed by Dr. Daniel Wecht confirm both the history of separate accidents, and the cumulative degenerative effects of Kelley's years of working as a pump mechanic/millwright (Appendix 13 and 14 - Neville 0304-0312, Neville 0234-0242).

38.    Thus, Kelley's post July 2003 medical treatment/time off work is a separate occurrence under the clear unambiguous Policy language whether it is the result of a 2003 accident, or the culmination of injuries caused by his work conditions (occupational disease).

39.    Because Kelley's injuries are the result of multiple occurrences under the Policy, the SIR has not been satisfied for the 1993 occurrence.

40.    As such, Plaintiff's claim for excess workers compensation coverage under the Policy is improper.

41.    For these reasons, and as set forth in greater detail in the attached Brief in Support, TIG respectfully requests that this Honorable Court enter summary judgment in its favor and against Plaintiff, with a declaration that (a) Mr. Kelley's compensable disability is the result of multiple "occurrences" as defined under the Policy, (b) Neville has not satisfied the SIR under any one occurrence that caused bodily injury during the policy period, and (c) TIG has no duty to provide Excess Workers Compensation benefits to Plaintiff to cover the Kelley Claim.

WHEREFORE, TIG respectfully requests judgment in its favor and against Neville as set forth above.

Respectfully submitted,

Dated: <u>June 30, 2020</u>

GORDON REES SCULLY
MANSUKHANI, LLP

By: <u>*/s/ Christopher J. Haselhoff*</u>
    Christopher J. Haselhoff, Esquire
    Pa. I.D. # 307731
    chaselhoff@grsm.com
    Summerly E. Kulik, Esquire
    Pa. I.D. #87722
    skulik@grsm.com
    707 Grant Street, Suite 3800
    Pittsburgh, PA 15219
    *Counsel for Defendant, TIG Insurance*
    *Company*

## CERTIFICATE OF SERVICE

I hereby certify that on June 30, 2020, I electronically filed the foregoing with the Clerk of

Court using the CM/ECF system, which will then send a notification of such filing to the following:

J. David Ziegler, Esquire
dziegler@dmclaw.com
Dickie, McCamey & Chilcote, P.C.
Two PPG Place
Suite 400
Pittsburgh, PA 15222
*Counsel for Plaintiff*

GORDON REES SCULLY
MANSUKHANI, LLP

By: */s/ Christopher J. Haselhoff*
    Christopher J. Haselhoff, Esquire
    Pa. I.D. # 307731
    chaselhoff@grsm.com
    Summerly Kulik, Esquire
    Pa. I.D. #87722
    skulik@grsm.com
    707 Grant Street, Suite 3800
    Pittsburgh, PA 15219
    *Counsel for Defendant, TIG Insurance*
    *Company*